UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
MARK CHODAKOWSKY,

     Plaintiff,       REPORT AND
              RECOMMENDATION

  v.

MICHAEL J. ASTRUE,      06 Civ. 07668 (KMK)(PED)
Commissioner of Social Security,

     Defendant.
-------------------------------------------------------X

TO THE HONORABLE KENNETH M. KARAS, United States District Judge:

  Plaintiff, Mark Chodakowsky, commenced this action pursuant to 42 U.S.C. §

405(g), challenging the decision by the Commissioner of Social Security ("the

Commissioner") denying Plaintiff's application for disability insurance benefits on the

grounds that he is not disabled.  Presently before this Court are the parties' motions for

judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  For the reasons set forth

below, I respectfully recommend that the Commissioner's cross-motion should be

granted and Plaintiff's motion denied.

I.  BACKGROUND

  Plaintiff Mark Chodakowsky was born on January 26, 1958 (R. 221).[1][2]  He

completed high school and one year of college. (R. 221-222).  Immediately prior to his

claim of disability, Plaintiff worked as a soils technician. (R. 70).  He previously held

positions as a land surveyor and a heavy equipment operator. (R. 70).  Plaintiff alleges

---

[1] Notations preceded by "R" refer to the certified record of proceedings relating to this
case submitted by Defendant.
[2] He was thus 47 years old on the date of issue, i.e., October 19, 2005, of the
Administrative Law Judge's ("ALJ") decision. (R. 21).

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

Copies mailed 4/22/09
Chambers of Judge Davison

that he could no longer work as of December 3, 2003, due to a variety of ailments, specifically: (1) emphysema; (2) asthma; (3) allergies; (4) herniated discs in his neck; and (5) tendon damage to his right wrist (R. 69).

Plaintiff's physical condition is largely undisputed.  Beginning in late 2003, Plaintiff sought treatment for allegedly disabling medical conditions, including respiratory distress.  (D.E. 14, pp. 4-6).  Plaintiff, a smoker, was diagnosed with chronic bronchitis, chronic obstructive pulmonary disorder (emphysema), cough, and asthma. (D.E. 14, pp. 4-6).  Plaintiff was also diagnosed as allergic to various outdoor allergens. (D.E. 14, pp. 4-6).

In addition to respiratory problems, Plaintiff suffered from a back disorder. Medical tests (both x-ray photographs and magnetic resonance imaging ("MRI")) revealed degenerative disc disease.  (D.E. 14, pp. 7-8).  Plaintiff was specifically diagnosed with discogenic disease of the cervical spine with subjective radiculopathy to the right upper extremity.  (D.E. 14, pp. 4-6).

Plaintiff also underwent a psychiatric evaluation.  (D.E. 11, pp. 11-12).  Plaintiff was evaluated as suffering from mild depressive symptoms from a lack of work and income.  (D.E. 11, pp. 11-12).  The clinical diagnosis was Adjustment Disorder with Mild Depressive Features.  (D.E. 11, pp. 11-12).   This evaluation was reviewed and endorsed by a State review physician.

On February 19, 2004, Plaintiff filed an application for both Social Security Disabilty benefits and Supplemental Security Income, claiming an inability to work due to his various impairments. (R. 118-121).  His application was denied on initial administrative review.  Pursuant to Plaintiff's request, an ALJ conducted a

videoconference hearing on August 25, 2005. The ALJ issued a written decision on
October 19, 2005, concluding that Plaintiff was entitled to neither disability insurance
benefits nor Supplemental Security Income payments. (R. 14-21). The ALJ's decision
became the final decision of Defendant on April 13, 2006, when the Appeals Council of
the Office of Disability Adjudication and Review denied review of said decision on July
20, 2006. This action followed.

II.     STANDARD OF REVIEW

        Section 405(g) of Title 42 of the United States Code empowers a Social Security
claimant to seek judicial review of the Commissioner's final decision denying such a
claimant's application for disability benefits. District courts are empowered "to enter,
upon the pleadings and transcript of the record, a judgment affirming, modifying, or
reversing the decision of the Commissioner of Social Security, with or without
remanding the cause for rehearing." 42 U.S.C. § 405(g). It is not "the function of a
reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel*,
198 F.3d 45, 52 (2d Cir. 1999). Rather, the court must affirm the Commissioner's
decision if it is supported by substantial evidence and if the proper legal standards were
observed. *See Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997).

        "To determine whether the findings are supported by substantial evidence, the
reviewing court is required to examine the entire record, including contradictory evidence
and evidence from which conflicting inferences can be drawn." *Snell v. Apfel*, 177 F.3d
128, 132 (2d Cir. 1999)(quoting *Mongeur v. Heckler*, 772 F.2d 1033, 1038 (2d Cir.
1983)). Substantial evidence is "'more than a mere scintilla. It means such relevant
evidence as a reasonable mind might accept as adequate to support a conclusion.'"

3

*Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). A court must defer to the Commissioner's factual findings and the inferences drawn from those facts, and the Commissioner's findings of fact are considered conclusive if they are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000).

III.   STATUTORY DISABILITY

The Social Security Act ("SSA") defines "disability" as "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...." 42 U.S.C. § 423(d)(1)(A). In addition, a person is eligible for disability benefits under the SSA only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

Evaluating disability claims involves a five-step analysis:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app.1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful

4

activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999). In determining whether there is other work which the claimant could perform, "the Commissioner must consider four factors: (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age and work experience." *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999)(*citing Mongeur*, 722 F.2d at 1037).

IV.    ALJ'S DETERMINATION

The ALJ applied the five-step procedure prescribed and concluded that Plaintiff was not disabled within the meaning of the SSA from claimed inception date through the date of issuance of the decision. At step one, the ALJ found that Plaintiff had not "engaged in substantial gainful activity since the alleged onset of disability". (R. 20). At steps two and three, the ALJ determined that Plaintiff's chronic obstructive pulmonary disease and back disorder were "severe" but did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Appendix 1 to Subpart P. (R. 20). At step four, the ALJ determined that Plaintiff was unable to perform any of his past relevant work. (R. 20). At step five, the ALJ determined that Plaintiff retained "residual functional capacity to perform a significant range of sedentary work" and that, pursuant to the Medical-Vocational Rule 201.21 as set forth in 20 C.F.R. Part 404, Appendix 2 to Subpart P, there were "a significant number of jobs in the national economy" that he

5

could perform. (R.20). The ALJ concluded, therefore, that Plaintiff was not under a "disability" as defined in the SSA at any time from the claimed inception date. (R. 20).

V.     ANALYSIS

    A.    PLAINTIFF RECEIVED A FULL AND FAIR HEARING

Prior to analyzing whether the Secretary's conclusions are supported by substantial evidence, the Court must first be satisfied that "the claimant has had 'a full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act.'" *Echevarria v. Secretary of Health & Human Serv.*, 685 F.2d 751, 755 (2d Cir. 1982)(quoting *Gold v. Secretary of Health, Educ. & Welfare*, 463 F.2d 38, 43 (2d Cir. 1972)). The Act must be liberally applied, for it is a remedial statute intended to include not exclude. *Bluvband v. Heckler*, 730 F.2d 886, 892 (2d Cir. 1984). As Plaintiff specifically contends that he did not receive a full and fair hearing, any inquiry must begin there.

Plaintiff appears to contend that the hearing before the ALJ was unfair as it was conducted by videoconference. *See* D.E. 11, p. 18 ("The ALJ...could not adequately see the plaintiff or smell him.") Plaintiff was notified by letter dated August 4, 2005, that the ALJ intended to conduct the hearing by video teleconferencing and advised of his right to opt out of said hearing and, instead, seek an in-person appearance before the ALJ (R. 43-44). Plaintiff affirmatively acknowledged receipt of the notice of hearing and did not place a check mark on the acknowledgement form next to the statement reading, "I do not want to appear at my hearing by video teleconference. Please reschedule my hearing so that I may appear in person." (R. 47). Additionally, the five (5) page pre-hearing memorandum to the ALJ dated August 24, 2005, from Plaintiff's counsel neither

6

indicated any objection to the planned videoconference nor expressed any concern that

the ALJ's ability to render an appropriate decision would be hampered by a lack of

ability to smell Plaintiff.  Because Plaintiff failed to take advantage of the opportunity to

attend the hearing in person, it cannot be concluded that he was denied a fair hearing due

to the mode of said hearing.

      B.     THE DECISION OF THE ALJ IS NOT CONTRARY TO THE LAW

Plaintiff asserts that "[t]he opinion of the Commissioner is contrary to Social

Security Law" (D.E. 11, p. 4).  The sole contention of a violation of Social Security law

discernable from Plaintiff's Memorandum is an allegation that the ALJ improperly found

that "the claimant's allegations of his inability to work...are not credible" (R. 17).

Plaintiff contends that, due to his good work record, he should be found credible. *See*

D.E. 11, p. 18.  The regulations provide that the ALJ "will consider all of the evidence

presented, including information about your prior work record." 20 C.F.R. §

416.929(c)(3).  While "[a] claimant with a good work record is entitled to substantial

credibility when claiming an inability to work …. [w]ork history...is but one of many

factors to be utilized by the ALJ in determining credibility." *Marine v. Barnhart*, 2003

U.S. Dist. LEXIS 19082 at *10 (S.D.N.Y. 2003).  Although a plaintiff with a long work

history is entitled to "substantial credibility", the Commissioner may discount a plaintiff's

testimony to the extent that it is inconsistent with medical evidence, the lack of medical

treatment, and her own activities during the relevant period. *Howe-Andrews v. Astrue*,

2007 U.S.  Dist. LEXIS 46568 at *29 (E.D.N.Y. 2007).

Plaintiff does have an extensive work history (R. 70).  However, as the ALJ notes,

Plaintiff testified to an ability to complete a "wide variety of activities of daily living,"

including: cooking, tending to his personal hygiene; housecleaning; laundry; and home repairs (R. 18). As set forth more fully below, there is medical evidence inconsistent with the claims asserted by Plaintiff with regard to his health. Under the standard outlined in *Howe-Andrews*, then, it cannot be held to be legal error for the ALJ not to find Plaintiff's assertions credible as the Commissioner has discretion to discount Plaintiff's credibility in light of his abilities.

As to any other unspecified claims of a basis for decision contrary to law, it is undisputed that the ALJ applied the five-step analysis required under 20 C.F.R. § 404.1520. *See* D.E. 11, pp. 7-8. As Plaintiff has failed to demonstrate either statutory or common law violations of Social Security law and the record indicates the ALJ conducted the appropriate inquiry, it cannot be said that the ALJ's decision is contrary to law.

C.    THE DECISION OF THE ALJ IS SUPPORTED BY SUBSTANTIAL EVIDENCE

As a preliminary matter, it should be noted that Plaintiff does not argue against the findings of the ALJ with regard to steps 1 and 4 of the five-step analysis undertaken (i.e., the determinations that Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability and that Plaintiff is unable to continue at his past work). Plaintiff does not dispute, either, the ALJ's determination, at step 2, that his chronic obstructive pulmonary disease and back disorder are considered "severe" under 20 C.F.R. §§ 404.1520(c) and 416.920(c). Plaintiff's contentions of lack of substantial evidence are addressed to the findings of the ALJ that: (a) Plaintiff's mental impairment is not

"severe;" (b) Plaintiff does not have impairments equal to those set forth in the listings;
and (c) Plaintiff can perform sedentary work.

With regard to Plaintiff's first contention, the record contains substantial evidence
that Plaintiff's mental status is not disabling. The ALJ's decision specifically refers to
the psychiatric evaluation conducted by Dr. Roger Baretz. Dr. Baretz diagnosed Plaintiff
with "Adjustment Disorder with Mild Depressive Features" and stated that Plaintiff had
"no need for any psychotherapy or psychotropic medications" at the time of diagnosis (R.
180-181). Dr. Baretz further concluded that, "[p]sychiatrically, I feel he is perfectly able
to work or to do work-related activity" (R. 180). As the condition diagnosed by Dr.
Baretz required neither treatment nor medication and, additionally, had no ill-effect on
Plaintiff's ability to work, it was reasonable for the ALJ to infer that said condition is not
"severe."

Section 12.00 of the listings requires a mental disorder of severity such that "an
individual with an impairment(s) that meets or is equivalent…to the criteria…could not
reasonably be expected to do any gainful activity." Dr. Baretz' report constitutes
substantial evidence supporting the ALJ's failure to find severe mental impairment. Dr.
Baretz' opinion is bolstered by Dr. Abdul Hameed's evaluation (R. 193-206).[3] Plaintiff
did not provide any evidence to the contrary, either to the ALJ or the Appeals Council.

---

[3] Dr. Hameed is an agency review doctor. Under the applicable regulation,
"Administrative law judges are not bound by any findings made by State agency medical
or psychological consultants, or other program physicians or psychologists. However,
State agency medical and psychological consultants and other program physicians and
psychologists are highly qualified physicians and psychologists who are also experts in
Social Security disability evaluation. Therefore, administrative law judges must consider
findings of State agency medical and psychological consultants or other program
physicians or psychologists as opinion evidence, except for the ultimate determination
about whether you are disabled. See § 416.912(b)(6)." 20 C.F.R. § 416.927(f)(2)(i).

In the absence of any medical testimony contradicting the findings of both Dr. Baretz and Dr. Hameed, the finding by the ALJ that Plaintiff's mental condition is not disabling is supported by evidence both substantial and uncontroverted.

As to the second disputed finding—that Plaintiff does not have medically determinable impairments that meet or equal one of the listed impairments in 20 C.F.R. Part 404, Appendix 1 to Subpart P—the record contains specific test results demonstrating that Plaintiff's respiratory problems are not adequately severe to meet the listings (R. 151). Section 3.02 of the listings requires, for a person of Plaintiff's height, either: (a) an $FEV_1$ equal to or less than 1.65; or (b) and FVC equal to or less than 1.85. Plaintiff's results were 4.23 and 5.64, respectively. The Court is entitled to grant substantial weight to objective, clinical test results. *See*, e.g., *Dejesus v. Apfel*, 2000 U.S. Dist. LEXIS 15527 at *9 (S.D.N.Y. 2000)(absence of test results and objective findings rendered physician's opinions unpersuasive). Substantial evidence supports the ALJ's determination, then, to the extent that the ALJ found Plaintiff's respiratory problems unequal to the listings.

Similar, though less explicitly set forth, is the ALJ's determination regarding the severity of Plaintiff's back disorder. Relying on the report made by Dr. Mark Appel, the ALJ determined that Plaintiff's back disorder is "severe." Dr. Appel diagnosed discogenic disease of the cervical spine with subjective radiculopathy to the right upper extremity (R. 186). Section 1.04 of the listings sets forth the requirements for a finding of disability due to degenerative disk disease; subpart A requires "[e]vidence of nerve root compression" and, "if there is involvement of the lower back, positive straight-leg raising test." As Dr. Appel's report affirmatively stated that Plaintiff had a negative

10

compression test and a negative straight-leg raising test (R. 185), the ALJ's finding is supported by substantial evidence to the extent that Plaintiff's back disorder is not disabling under the listings.

The regulations require that, as Plaintiff claims multiple impairments, the combined effect of said impairments be addressed by the ALJ in determining eligibility. *See* 20 C.F.R. § 404.1523. The ALJ's decision carefully analyzes the effects of the impairments in combination (i.e., the interaction of Plaintiff's back problems and mental status, which allow him to perform sedentary work, with his respiratory disorders, which limit his exposure to certain airborne irritants). The report, for example, notes that Plaintiff's "capacity for sedentary work has not been significantly compromised" by limitations caused by his respiratory ailments (R. 19). As the ALJ's analysis was undertaken with consideration of the substantial evidence noted herein, his determination that Plaintiff's combined impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4, was supported by substantial evidence.

As noted, the ALJ determined that Plaintiff can perform sedentary work (R. 20). This finding is supported by Dr. Appel, whose report states "[h]e is able to perform sedentary activities. He is not able to perform any type of bending, lifting, and carrying of greater than fifteen pounds" (R. 186). The limitations described by Dr. Appel are within the parameters of sedentary work as set forth in the regulations. *See* 20 C.F.R. § 404.1567(a)("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools"). The regulation also notes that jobs "are sedentary if walking and standing are required

11

occasionally." *Id.*   The ALJ notes that both Dr. Petr Bezdicek as well as Plaintiff himself provided evidence that Plaintiff could walk short distances on occasion (R. 17-19).

Plaintiff contends that the ALJ erred in accepting Dr. Appel's opinion as to his residual abilities over that of Dr. Bezdicek, who had been Plaintiff's treating physician (D.E. 11, pp. 14-16). The Second Circuit has noted that "Social Security regulations require an ALJ to give 'controlling weight' to the opinion of a treating physician on the issue of the nature and severity of a claimant's impairment if that opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Foxman v. Barnhart*, 157 Fed. Appx. 344, 346 (2d Cir. 2005)(citing 20 C.F.R. § 1527(d)(2)). Dr. Bezdicek's report dated June 22, 2005, and titled "Medical Source Statement of Ability to Do Work-Related Activities (Physical)," opined that Plaintiff could lift up to ten pounds, stand and walk less than two hours in a workday, and was limited in his ability to reach and feel as well as handle and finger objects (R. 210-213). These conclusions were not   supplemented with any laboratory reports or narrative descriptions of diagnostic techniques. Said conclusions, further, are—with the exception of Plaintiff's weight limitations on lifting—in direct contradiction to the findings of Dr. Appel, whose report sets forth specific bases for his observations. Dr. Appel's report constitutes substantial evidence. The ALJ did not err, then, in not giving Dr. Bezdicek's opinions "controlling weight" under the treating physician doctrine.[4]

---

[4] It should be noted that the ALJ also appears to have discounted Dr. Bezdicek's findings on the basis that he had not seen Plaintiff since April of 2005, over 16 months prior to the hearing. The ALJ states that Dr. Bezdicek's report of June, 2005, "admits he has not

D.    THE ALJ PROPERLY DETERMINED PLAINTIFF'S STATUS BY
      APPLICATION OF THE MEDICAL VOCATIONAL GUIDELINES

The ALJ's final challenged substantive finding—that "there are a significant number of jobs in the national economy" that Plaintiff could work—is supported by the statutory medical vocational guidelines. As a matter of law:

> Once a disability claimant proves that his severe impairment prevents him from performing his past work, the Secretary then has the burden of proving that the claimant still retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy….In the ordinary case the Secretary satisfies his burden by resorting to the applicable medical vocational guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1986).

*Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986). After determining that Plaintiff was a "younger individual age 45-49" and a skilled or semiskilled high school graduate with transferable skills, the ALJ found Plaintiff not disabled pursuant to the grids, specifically Rule 201.21 of 20 C.F.R. Part 404, Subpart P, Appendix 2. As Plaintiff does not argue that the ALJ's determination as to the constituent elements of the grid analysis was incorrect, the ALJ's application of the grids is adequate to support his finding that Plaintiff was not disabled pursuant to the holding of *Bapp*.

VI.    CONCLUSION

---

treated the claimant since April 2004 (Exhibit 13-F)." The referenced report contains no such admission (R. 209). There is, however, no documentary evidence that Dr. Bezdicek actually saw Plaintiff after April, 2004. While Plaintiff testified at the hearing that he had seen Dr. Bezdicek in "June"—presumably, of 2005, the year the hearing was held—Plaintiff has failed to provide any documentation of such a visit, either to the Appeals Council or with the present motion. In the absence of any such documentation, the inference made of Plaintiff's treatment history with Dr. Bezdicek by the ALJ is not unreasonable.

For the reasons set forth herein, I respectfully recommend the Court DENY Plaintiff's Motion for Judgment on the Pleadings and GRANT Defendant's Cross-Motion for Judgment on the Pleadings.

VII.    NOTICE

Pursuant to 28 U.S.C. §636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of thirteen (13) working days, *see* Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of The Honorable Kenneth M. Karas at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Karas.

Dated:   April 21, 2009
         White Plains, N.Y.

Respectfully submitted,

PAUL E. DAVISON
UNITED STATES MAGISTRATE JUDGE